## MITCHELL LIME COMPANY *v.* NICKLESS, ADMINISTRATRIX.

[No. 6,381. Filed October 8, 1908. Rehearing denied May 13, 1909. Transfer denied June 24, 1909.]

1. PLEADING.— *Complaint.*— *Master and Servant.*— *Safe Place.*— *Rock Quarries.*—A complaint alleging that defendant knowingly and negligently permitted the plaintiff to work in defendant's stone quarry near a loose stone which was likely to fall, the plaintiff being ignorant thereof, and that such stone fell and injured plaintiff, states a cause of action. p. 199.

2. PLEADING.—*Complaint.*—*Master and Servant.*—*Unsafe Place.*— *Time for Warning.*—*"Permitted."*—A complaint alleging that defendant negligently "permitted" the plaintiff's decedent to work in an unsafe place, sufficiently shows that the defendant knew of the danger a sufficient length of time within which to have warned the decedent thereof, the word "permitted" importing knowledge of the danger and an opportunity to warn. p. 201.

3. PLEADING.—*Complaint.*—*Master and Servant.*—*Vice-Principal.*— *Selection.*—*Negligence in.*—An allegation in a complaint that defendant company was negligent in the selection of its superintendent, on account of whose negligence decedent is alleged to have been killed, is useless, the defendant being responsible for such superintendent's negligence regardless of care in his selection. p. 201.

4. TRIAL.— *Verdict.*— *Interrogatories.*— *Conflict.*— The answers to the interrogatories to the jury control the general verdict only where they are in irreconcilable conflict therewith upon any supposable state of the evidence. p. 202.

5. TRIAL.—*Interrogatories.*—*Master and Servant.*—*Unsafe Place.*— *Rock Quarries.*—Answers to interrogatories, which do not show

that the decedent, by the use of ordinary care, could have discovered the danger of a loose overhanging rock, that he could see the stone, and that its "condition" was in plain view, do not overturn a general verdict for the plaintiff, since the word "condition" does not clearly indicate that decedent knew that such rock was liable to fall. p. 203.

6. TRIAL.—*Interrogatories.*—*Master and Servant.*—*Safe Place.*—*Rock Quarries.*—Answers to interrogatories to the jury showing that the decedent could see the overhanging stone which fell and killed him, and could see its "condition," do not overturn a general verdict for the plaintiff, since there may have been other indications of the stone's liability to fall not observed by decedent, but which defendant should have observed. p. 203.

7. APPEAL.—*Weighing Evidence.*—The Appellate Court cannot weigh conflicting evidence. p. 204.

8. APPEAL.—*Evidence.*—*Failure of.*—Where there is no evidence tending to prove a material fact in the plaintiff's case, a judgment for the plaintiff will be reversed. p. 204.

9. TRIAL.—*Evidence.*—*Master and Servant.*—*Unsafe Place.*—*Defendant's Knowledge of.*—In an action for the death of a servant caused by the fall of an overhanging rock, the plaintiff must prove that the defendant knew, or should have known, of such dangerous condition. p. 204.

10. EVIDENCE.—*Liability of Stone's Falling.*—*Res Ipsa Loquitur.*—The facts that a stone was overhanging the plaintiff and that it fell constitute no evidence that defendant company should have taken notice of the danger created thereby, the doctrine of *res ipsa loquitur* not applying. pp. 205, 206.

11. MASTER AND SERVANT.—*Duties of Inspection.*—The master is under the duty of inspection for the detection of dangers, while the servant is bound to make ordinary observations therefor. p. 205.

12. MASTER AND SERVANT.—*Unsafe Place.*—*Accidents.*—The master is not an insurer of the safety of the servant's working place, and is not liable for the happening of an accident which has no known cause. p. 206.

From Lawrence Circuit Court; *James B. Wilson,* Judge.

Action by Carrie Nickless, as administratrix of the estate of Ambrose Nickless, deceased, against the Mitchell Lime Company. From a judgment on a verdict for plaintiff for $2,500, defendant appeals. *Reversed.*

*Elmer E. Stevenson* and *John H. Edwards,* for appellant.
*Henry P. Pearson* and *James E. Boruff,* for appellee.

RABB, C. J.—The appellant was engaged in the manufacture of lime from oölitic limestone, and, as incident to the business, quarried the stone from which the lime was manufactured from ledges, and in so doing used explosives to break and shatter the stone from the ledge. Appellee's decedent was an employe of the appellant, engaged as a common laborer in the stone-quarry, and while so engaged was injured by the fall of loose rock from the ledge, which injuries resulted in his death.

This action was brought by appellee to recover damages for her decedent's death, charging that the same resulted from the negligence of appellant.

The complaint is in two paragraphs. Appellant's demurrer to each being overruled, the cause was submitted to a jury for trial, a general verdict was returned in favor of the appellee, and with the general verdict answers to interrogatories were submitted to the jury.

Appellant's motions for judgment in its favor on the answers to interrogatories, and for a new trial, were overruled, and judgment rendered on the verdict in favor of appellee.

The errors assigned and relied on here for a reversal arise upon the rulings of the court below upon the demurrer to the complaint, the motion for judgment in favor of appellant on the answers to interrogatories, and for a new trial. We will consider them in the order in which they are presented.

The first paragraph of the complaint, after the formal averments in reference to the appointment of appellee as administratrix of the estate of the decedent, and a description of the business in which the appellant was engaged, averred that on January 1, 1906, the decedent was in the employ of the appellant, and while in the performance of the duties of his employment was engaged in breaking limestone at the bottom of appellant's quarry, and in close proximity to the face of a ledge of limestone; that while so en-

gaged he was struck and fatally injured by the fall of a large piece of stone from said ledge, which had been jarred loose by blasting. These allegations then follow, upon which appellant's liability is predicated: "That said injury was due to the negligence of defendant in failing to exercise reasonable care in furnishing decedent a safe place in which to work; * * * that decedent did not know that said stone was loose and likely to fall at any time; * * * that said stone was loose and likely to fall at any time, and that defendant knew that it was loose and likely to fall, * * * and negligently failed to take any steps whatever to protect decedent from the effect * * * of its fall, * * * but negligently permitted the decedent to work in its immediate vicinity, to the full knowledge of defendant as to where decedent was located, and with full knowledge on defendant's part of the true condition, and of its likelihood to fall, without in any manner warning decedent; that by reason of said acts of negligence, * * * in permitting decedent to work in its immediate vicinity without warning him of the likelihood of said stone to fall, the place where decedent was required to work was rendered unsafe, and said injury and death were brought about solely by said acts of negligence."

The second paragraph of the complaint contains the same averments that are contained in the first, and in addition there are averments charging that the superintendent of the work, whom it is charged was a vice-principal, was incompetent and negligent in the discharge of his duties, and that the appellant was guilty of negligence in employing him and retaining him in its service with knowledge of his incompetency.

This complaint could not be commended as a model pleading. There is much confusion in the statement of facts going to make the appellee's case, and there are many redundant and meaningless averments that add to the confusion of statements. But each paragraph does directly aver that the

stone which fell on the decedent and caused his injury was loose and likely to fall, and that the appellant knew it, but, with this knowledge, permitted the appellee's decedent to carry on his work in such proximity to the stone that if it fell it would injure him. This was sufficient to charge the appellant with negligence, and the direct averment that the decedent did not know that the rock was loose and likely to fall, sufficiently shows that the risk was not assumed by the appellee's decedent. *Malott* v. *Sample* (1905), 164 Ind. 645, and cases cited.

It is insisted that while appellant is sufficiently charged with notice of the danger, the complaint does not aver, nor show by the facts averred, that appellant possessed this knowledge a sufficient length of time before the accident happened to warn the decedent of the danger. The charge here is that the appellant, with knowledge of the danger, "permitted" the decedent to carry on his work in the dangerous place. What does the word "permitted" mean? It necessarily implies power to prevent. It means that the decedent, with appellant's knowledge, worked in the presence of the danger, when appellant could have prevented him from so doing. The word used necessarily implied time and opportunity on the part of appellant to warn the decedent of the danger.

The second paragraph of the complaint was evidently intended to charge the appellant with negligence in the matter of the employment of its superintendent. It is unnecessary to consider its sufficiency upon this theory, for the manifest reason that it is a matter of no consequence whether the appellant was guilty of negligence in the employment of one who acted as a vice-principal. The appellant would be responsible for his negligence, if he were guilty of any, whether it had been guilty of negligence in his employment or not, as his negligence would be its negligence. The rule creating a liability on the part of a master to his servants for negligence in the employment of agents

to carry on his work, has application only where it relates to the employment of fellow servants for whose negligence the master would not otherwise be responsible to coemployes. Both paragraphs state the same cause of action, and both are sufficient to withstand a demurrer.

The following answers were returned by the jury to the following interrogatories submitted to it: "(50) Was not the place from which the rock fell and injured Ambrose Nickless, and the rock that fell and struck him, before it fell, and its condition, at all times in full, plain and open view of Ambrose Nickless? A. Yes." "(52) If Ambrose Nickless had looked for loose stone in the wall or face of the quarry, would be have seen the rock that struck and injured him? A. Yes." "(71) What caused the rock to fall that struck and injured Ambrose Nickless? A. Cause not known. (72) Was there anything to indicate to a competent inspector, making an inspection of the ledge from which the stone fell that struck Ambrose Nickless, including the place in the ledge from which the stone fell, prior to the happening of the accident, for stones loose and likely to fall, and make the usual and ordinary tests, and making the inspection in the usual and ordinary manner, the manner commonly adopted by prudent men in like business under like circumstances, that the stone that struck Ambrose Nickless was loose and likely to fall? A. Yes. (73) If you answer the last interrogatory in the affirmative, state what there was so to indicate? A. Overhanging the ledge."

It is the contention of appellant that the answers to these interrogatories are in conflict with the general verdict, and entitle the appellant to a judgment, notwithstanding the general verdict.

The rule is well settled that the answers to interrogatories returned by the jury control the general verdict only when they are in irreconcilable conflict therewith upon any

4.   supposable state of the evidence within the issues. *Consolidated Stone Co.* v. *Summit* (1899), 152 Ind.

297; *Diamond Plate Glass Co.* v. *DeHority* (1896), 143 Ind. 381; *Wright* v. *Chicago, etc., R. Co.* (1903), 160 Ind. 583; *Citizens St. R. Co.* v. *Hoop* (1899), 22 Ind. App. 78; *Hill* v. *Indianapolis, etc., R. Co.* (1903), 31 Ind. App. 98; *Indianapolis Traction, etc., Co.* v. *Holtsclaw* (1908), 41 Ind. App. 520.

We think appellant's point is not sustained. The answers to these interrogatories do not show that Ambrose Nickless, appellee's decedent, knew, or could by the exercise of ordinary care have known, of the danger arising from the liability of the stone to fall while he was engaged in his work in close proximity to it. They do find that had he looked he could have seen the stone that fell upon him, and that its "condition" was in plain view. What we are to understand by its "condition" is not disclosed. It does not appear that its "condition," with reference to its liability to fall, was in plain view, and we are not to infer that it was; nor does the fact that the particular cause of the fall of the stone was unknown, relieve the appellant from liability. The negligence charged against appellant is knowing that the stone was likely to fall, and that with this knowledge it permitted its employe to work under the impending danger. There might have been one or many causes that precipitated the stone on the unfortunate workman, and the precise cause of its fall might be impossible of ascertainment; but the appellant knew that it was likely to fall from some cause, and it did fall and kill the appellee's decedent. Had the appellant performed its duty and warned the decedent of the danger, he would have been safe, whatever may have caused the stone to fall.

It is contended that the answers to interrogatories affirmatively show that the only indication of danger of the stone's falling from the ledge was as patent and open to the view of the deceased workman, as it was to the appellant; that the answers to the interrogatories show that the stone's overhanging the ledge

was an indication of danger that the appellant should have taken notice of, and was negligent in failing to do so, and that this was a thing which the appellee's decedent could have seen had he looked.

We are dealing now with answers to interrogatories, and not the evidence. These answers to interrogatories do not show that the overhanging ledge was the only indication that there was danger of the stone's falling. Nothing appearing to the contrary in the answers to interrogatories, there may have been in addition to the fact of the stone's overhanging the ledge, which was open and patent, numerous other indications that could have been discovered upon reasonable inspection, but which were not open and patent to the eye at a glance, and of which the workmen would not be bound to take notice, and which the master would be bound to observe and guard against. No error intervened in overruling the motion for a judgment in appellant's favor on the answers to interrogatories.

Appellant's motion for a new trial presents, among many other questions, that of the sufficiency of the evidence to support the verdict. It is true that this court cannot

7. weigh the evidence, or determine any question of the preponderance of evidence. If there be any evidence in the record to support the verdict, it is sufficient here. But there must be some evidence to sustain every material

8. allegation of the complaint, and where the record discloses that a verdict has been returned in favor of a party having the burden of establishing certain facts alleged in the complaint, and the question is properly raised, should the evidence in the record fail to show the existence of such material fact, the judgment cannot be sustained.

In this case the appellee alleged in her complaint that the appellant knew that the stone which fell upon and injured her decedent was loose and likely to fall. Conceding

9. that this allegation would be sustained by proof that by the exercise of ordinary care the appellant could

have discovered the dangerous condition of the ledge, it was just as essential to sustain the appellee's case that this fact be proved as it was that it be alleged in the complaint, and the verdict does not supply the place of evidence. There was no attempt on the part of appellee to prove this essential fact. There was no pretense of any kind of a showing that the appellant had actual notice that the stone which fell from the ledge and injured appellee's decedent, was loose and likely to fall, and the only evidence appearing in the record that its condition might have been discovered by the exercise of ordinary care on the part of appellant, was that it overhung the ledge, and the happening of the accident itself. So far as the fact that the loose stone overhung the ledge of rock was concerned, that was a patent danger equally within the observation of the decedent and the appellant, and of which decedent was bound to take notice.

It is the law, as asserted by the appellee, that the obligation to take notice of dangerous defects does not rest upon the master and servant alike. The servant is only bound to know of patent defects, those that may be seen at a glance. He is not required to examine the place where he works, or the tools or appliances with which he works, to discover dangers that are not patent to the eye. He has a right to rely upon the performance by the master of all his duties, and to presume that the place and tools have been properly inspected by the master. Reasonable care on the part of the master requires inspection and search for latent defects which, by the exercise of ordinary care, could be discovered by inspection; while reasonable care on the part of the servant requires attention and observation of open and obvious defects and perils. *Louisville, etc., R. Co.* v. *Quinn* (1896), 14 Ind. App. 554, and cases cited.

The master is bound to know of latent defects and conditions that would render dangerous the place where, or the

tools and appliances with which, the servant is required to work. The rule *res ipsa loquitur* has no application to this kind of a case; that is, the happening of the accident 10. itself is not proof of the negligence on the part of the person charged. There must be some proof that there were some indications beyond those equally open and visible to the decedent and to the appellant that would have been discovered by the exercise of ordinary care in the inspection of the ledge, and this proof is wholly wanting in this case. None of the witnesses testified that there were any signs that the stone that fell and injured the decedent was not a solid part of the block from which it became detached, except that it bulged out from the face of the ledge, and this fact would have been plainly visible to the decedent had he exercised attention and observation. There were no cracks discoverable to indicate that the rock was loose. The appellant's foreman testified that immediately after the blast, which shattered the stone, was fired, he went over the ledge and examined it for loose stones, and pried down all that he could discover that were loose; that he could see no indications that the stone which fell and struck decedent was loose. There were no cracks around it. This evidence is in nowise disputed. Not only is there a failure of proof of latent conditions indicating that the stone was loose and likely to fall, but the uncontradicted evidence showed that a proper and timely inspection of the ledge was made by a competent foreman employed by appellant for such purpose.

The appellant was not an insurer of its employes 12. against accident. The evidence shows that the place where appellant's work was carried on was necessarily a dangerous place, and could not be rendered absolutely safe by any degree of care on the part of the employer; that accidents of the character that happened the unfortunate victim in this case were liable to happen from unaccountable causes, as this one did; that stones giving no outward indi-

cation of their liability to do so, were liable to fall, and for accidents resulting from such causes, no legal liability attaches to the employer.

Judgment reversed.

Comstock, J., concurs in result.